J-S23029-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: M.P., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: M.P. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1752 WDA 2018 |

Appeal from the Order Entered November 19, 2018
In the Court of Common Pleas of Allegheny County Family Court at
No(s): CP-02-AP-0000063-2018

BEFORE: BENDER, P.J.E., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.: **FILED MAY 24, 2019**

M.P. (Father) appeals from the order dated November 14, 2018, and entered November 19, 2018, which granted the petition of the Allegheny County Office of Children, Youth, and Families (CYF) to terminate his parental rights to his minor daughter, M.P., born in April 2016 (Child).[1] We affirm.

Mother and Father were known to CYF before Child's birth, and it was alleged that Mother's parental rights as to three other children had been

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] There is no indication that Father and Child's mother, L.C. (Mother), were married. Mother consented to the termination of her parental rights, has not appealed, and is not a party to the instant appeal. Father reported that he has four children, each with different mothers, including Child. Father's other children were not subjects of the underlying proceeding.

terminated.[2]  Pet. For Involuntary Termination of Parental Rights, 3/13/18, at 9.  CYF had concerns regarding domestic abuse between Father and Mother, Father's drug and alcohol abuse, and Father's untreated mental health issues. *Id.* at 43.  Father also had a criminal record.

Immediately after Child's birth, CYF obtained an emergency custody authorization for Child and took custody of Child.[3]  *Id.* at 39-43.  On May 16, 2016, Child was adjudicated dependent.

Father was subsequently incarcerated from May 2016 to July 2016, and then from September 2016 to April 2017.  *Id.* at 43-44, 49, 52.  On September 8, 2017, the trial court changed Child's permanency goal to adoption based, in part, on Father's failure to contact CYF and his lack of progress on the family service plan.[4]

---

[2] At the hearing, it was alleged that Father had his parental rights terminated to two of his other children.  *See* N.T., 11/14/18, at 42-43.  It is unclear whether that allegation referred to Father's other children or Mother's other children.  However, there is no indication in the record that CYF sought a finding of aggravated circumstances against Father based on a prior involuntary termination of parental rights.  Furthermore, CYF did not allege that Father had his parental rights terminated to his other children in its petition to terminate Father's rights to Child.

[3] Father was present at Child's birth.  N.T., 11/14/18, at 39-40, 44.

[4] It does not appear that Father appealed the goal change order.

On March 13, 2018, CYF filed a petition seeking to terminate Father's parental rights to Child. On October 22, 2018, CYF filed a petition to confirm consent to termination of parental rights on behalf of Mother.

On November 14, 2018, the court convened a hearing on the petitions. Heidi Hysong and Shawnna Crago, both CYF caseworkers, and Terry O'Hara, Ph.D., testified in support of the petition. Father was present with his counsel. Father and Mary Safran, a parenting class instructor, testified on Father's behalf. Jonathan Budd, Esq., represented Child as guardian *ad litem* and legal counsel. Attorney Budd averred that Child was too young to express her legal preferences on the record. **See In re T.S.**, 192 A.3d 1080, 1092 (Pa. 2018).[5]

Ms. Hysong testified that she was assigned to Child's case from October 2017 to May 2018. N.T., 11/14/18, at 39-40. Ms. Hysong noted that Child has been in pre-adoptive kinship foster care with Maternal Grandparents since she was seven months old. **Id.** at 78-79, 102. Maternal Grandparents also care for Child's older siblings, with whom Child is close. **Id.** Child has a very

---

[5] In **T.S.**, the Pennsylvania Supreme Court held that where a child is too young to express a legal preference, there is no conflict between a child's best and legal interests. **T.S.**, 192 A.3d at 1092-93 (discussing **In re Adoption of L.B.M.**, 161 A.3d 172 (Pa. 2017)). Under such circumstances, a guardian *ad litem* may serve dual roles and satisfy the child's right to counsel in involuntary termination proceedings. **Id.**; **see also** 23 Pa.C.S. § 2313(a). Here, Child was approximately two years and seven months old at the time of the hearing. **See** N.T., 11/14/18, at 3-4. Therefore, she was too young to express her preferences, and Attorney Budd's representation satisfied the requirement that legal counsel be appointed for Child. **See T.S.**, 192 A.3d at 1092-93.

positive relationship with Maternal Grandparents, who meet all of her educational, psychological, and developmental needs. *Id.* at 80-82.

When assigned to the case, Ms. Hysong sent letters to several addresses for Father informing him that she was the new caseworker. *Id.* at 58. At some point, Father provided his correct address. *Id.* However, Father had no contact with Ms. Hysong or CYF before December 1, 2017. *Id.* at 60.

Ms. Hysong testified that she first spoke to Father on December 1, 2017, at a hearing for one of Father's other children. *Id.* at 58-59, 63. Ms. Hysong testified that she then personally communicated Father's goals as (1) being evaluated for drug and alcohol issues, (2) maintaining sobriety and contact with CYF, (3) attending parenting classes, domestic violence counseling, and an Allegheny Forensic Associates (AFA) evaluation to determine if visitation could take place, and (4) visiting Child. *Id.* at 60. Additionally, a goal to obtain housing was set. *See id.* Ms. Hysong indicated that Father completed an evaluation for drug and alcohol issues and a parenting class. *Id.* 60-64.

According to Ms. Hysong, the only contact Father had with Child was during an interactional evaluation in February of 2018. *Id.* at 77. Father did not send any letters, cards, or gifts to Child. He did not attend Child's medical appointments. *Id.* at 77-78. At no point did Father ask to have Child placed in his custody. *Id.* at 77. Ms. Hysong stated that there was no parental bond between Father and Child. *Id.* at 82-83.

Ms. Crago testified that she was assigned to Child's case from May 2018 through the hearing date. *Id.* at 103. Father contacted her only to verify a

visitation time. *Id.* at 114. Although Father attended two visits with Child since Ms. Crago took over the case, both visits occurred after the termination petition was filed. *Id.* at 118-19. In Ms. Crago's opinion, termination would best serve Child's needs and welfare because Father did not demonstrate a desire or intent to parent her, while Maternal Grandparents provide Child with a loving, safe environment that meets her needs. *Id.* at 120-21, 125-26.

Dr. O'Hara testified that he performed psychological evaluations of Child, Father, and Maternal Grandparents. *Id.* at 134-35. Dr. O'Hara diagnosed Father with "antisocial personality disorder; rule out of intermittent explosive disorder; also spouse or a partner violence, physical, confirmed; subsequent encounter; and a rule out of cannabis use disorder . . . ." *Id.* at 139. Dr. O'Hara suggested that Father was at risk for future violent behavior in light of his criminal history and mental health issues. *Id.* at 143. Dr. O'Hara noted that Father interacted affectionately with Child, but opined that Father was not able to care for Child appropriately. *Id.* at 145, 188-91. Additionally, Dr. O'Hara saw no evidence of a parent/child bond between Father and Child and concluded that it would not harm Child if Father's parental rights were terminated. *Id.* at 147, 156-57.

Father testified that due to his intermittent incarceration, he was not able to remain in consistent contact with CYF. *Id.* at 166-87. Father was attempting to recover from addiction and had attended domestic violence counseling and parenting classes. *Id.* at 173-76. Father explained that he did not seek custody of Child, noting:

. . . I want my daughter. I'd love to have her 24/7. Yes, I would -- more than anything in the world to love that, but I was just trying to be more realistic and ask for something that's more reasonable. That's all. That's all it was. Because I want her in my life. Yeah, I do, as much as I can get her in my life. So I just wanted to start off small and try to work my way up more. That was all. Something more realistic than a courtroom. That's all.

*Id.* at 174.

Ms. Safran testified that she taught the parenting class that Father attended and supervised two visits between Father and Child. *Id.* at 188. She stated that Father participated actively in the classes. *Id.* Ms. Safran testified that the visits she supervised between Father and Child were positive. *Id.* at 188-90.

On November 19, 2018, the trial court entered the order terminating Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (8), and (b). Father timely filed a notice of appeal and statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Father raises the following issues for our review:

[1.] Whether the trial court erred and/or committed a fatal error and/or abused its discretion by allowing [CYF] to admit permanency review court orders as evidence to prove their case to terminate the parental rights of [Father to Child]?

[2.] Whether the trial court erred and/or committed a fatal error and/or abused its discretion by finding that CYF proved by clear and convincing evidence that terminating the parental rights of [Father] would best serve the needs of [Child] both now and in the future?

*See* Father's Brief at 1 (unpaginated) (some capitalization omitted).

- 6 -

Father first contends that the trial court erred by allowing CYF to admit permanency review orders as evidence in the termination matter. **See id.** at 5. Father notes that there are different burdens of proof at permanency hearings, and that the rules of evidence at permanency hearings are relaxed. **Id.** at 5-7. Father, however, suggests that the information about his arrests, criminal history, and history of domestic violence contained in the permanency orders was hearsay. **Id.** at 6-7.

"[T]he decision of whether to admit or exclude evidence is within the sound discretion of the orphans' court. A reviewing court will not disturb these rulings absent an abuse of discretion. Discretion is abused if, *inter alia*, the orphans' court overrides or misapplies the law." **In re A.J.R.-H.**, 188 A.3d 1157, 1166–67 (Pa. 2018) (citations omitted).

Initially, we note that Father cites no legal authority to support his position that permanency review orders were inadmissible during the termination hearing. Father also fails to identify which statements he believes should have been excluded. Accordingly, he risks waiver of this issue. **See, e.g.**, **S.M.C. v. W.P.C.**, 44 A.3d 1181, 1189 (Pa. Super. 2012); **see also Umbelina v. Adams**, 34 A.3d 151, 161 (Pa. Super. 2011) (noting that "[w]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived" (citation omitted)); **Commonwealth v. Kane**, 10 A.3d 327, 331 (Pa. Super. 2010)

("This Court will not act as counsel and will not develop arguments on behalf of an appellant." (citation omitted)); *see also* Pa.R.A.P. 2119(a).

Regardless, Father's issue is without merit. Here, the trial court examined this issue as follows:

> Specifically, Father's counsel objected when CYF questioned its adoption worker about findings of fact regarding Father's arrests for domestic violence and other charges. The first time, following the objection, Father's counsel herself pointed out that the [c]ourt had the certified criminal record to review for convictions, and the attorney who was questioning the witness moved on. The second time Father's counsel also objected to testimony regarding arrests noted in a Permanency Review Order, and this [c]ourt, in keeping with the remarks of Father's own counsel, indicated that the certified criminal record would be used to distinguish between arrests and actual convictions and, as before, successfully urged that counsel for CYF move on.[fn1] Father's counsel is correct that the [c]ourt did permit CYF to enter the prior orders as an exhibit. As to father's criminal history and issues with domestic violence, Dr. Terry O'Hara, an expert in child psychology, testified extensively and without objection.
>
> > [fn1] Father did not object to later testimony from prior orders indicating that this [c]ourt sought to have Father address domestic violence issues through personal therapy or at the Women's Center and Shelter and to follow-up testimony that Father had declined to do so.
>
> Upon conclusion of the testimony, the [c]ourt proceeded to make findings and issue a ruling. In determining that termination of parental rights was appropriate, the [c]ourt did not rely on the Permanency Review Orders; the [c]ourt did, however, consider the certified criminal record and the unchallenged testimony of the psychologist. This record and the testimony demonstrated a history of violence and a concern that this history put the child at risk for exposure to future violent behavior.
>
> Therefore, Father's first contention lacks merit in this case because this [c]ourt did not rely upon the Permanency Review Orders in making its decision, regardless of the propriety of admitting those orders.

*See* Trial Ct. Op., 1/11/19, at 7-8 (record citations omitted). We discern no abuse of discretion or legal error in the trial court's rationale and agree that Father's first issue lacks merit. *See A.J.R.-H.*, 188 A.3d at 1166-67.

Father next contends that the trial court erred in terminating his parental rights under Section 2511(b). Father argues that Dr. O'Hara, the psychologist who performed an evaluation of Father, "did not corroborate" any positive things Father had to say about himself and that Dr. O'Hara's testimony was not objective. *See* Father's Brief at 7-11 (unpaginated). Father admits that Dr. O'Hara had no legal or psychological obligation to corroborate information provided to him. *Id.* However, Father contends that once Dr. O'Hara had corroborated some information about Father, he had an ethical obligation to explore the positive and negative information provided. *Id.* Significantly, Father does not actually argue that termination was not in the best interests of Child or assert that there was a parent-child bond between himself and Child. *Id.*

We review cases involving the termination of parental rights according to the following standard.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously

emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

The burden is upon the petitioner "to prove by clear and convincing evidence that [the] asserted grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, we have explained "[t]he standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" *Id.* (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

Section 2511(b) provides:[6]

> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein

---

[6] Father does not argue that the trial court erred in its ruling under Section 2511(a). Therefore, that issue is waived. **See Krebs v. United Ref. Co. of Pa.**, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that a failure to preserve issues by raising them both in the concise statement of errors complained of on appeal and statement of questions involved portion of the brief on appeal results in a waiver of those issues).

In any event, we would find a challenge under Section 2511(a) to be meritless. It is well settled that "we need only agree with the orphans' court as to any one subsection of Section 2511(a) in order to affirm." **See In re J.T.M.**, 193 A.3d 403, 408 (Pa. Super. 2018) (citation omitted).

In the instant case, Father was incarcerated for a good portion of Child's life. Although Father was incarcerated, he made no effort to remain in contact with Child or with CYF. **See In re Adoption of S.P.**, 47 A.3d 817, 830 (Pa. 2012). Even when he was released from incarceration, Father demonstrated no meaningful interest in assuming his parental duties. Moreover, due to ongoing mental health concerns, it was determined that Father was unable to parent Child safely without supervision. Accordingly, the record would confirm that Father is incapable of parenting Child and that he cannot or will not remedy his parental incapacity. **See** 23 Pa.C.S. § 2511(a)(2); **In re Z.P.**, 994 A.2d 1108, 1117 (Pa. Super. 2010) (indicating that the grounds for termination due to parental incapacity are not limited to affirmative misconduct); **In Interest of Lilley**, 719 A.2d 327, 330 (Pa. Super. 1998) (the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied" (citation omitted)).

which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

A proper analysis under Section 2511(b) requires the trial court to consider "whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *Z.P.*, 994 A.2d at 1117 (citation omitted). The court is not required to use expert testimony, and social workers and caseworkers may offer evaluations as well. *Id.* Ultimately, the concern is the needs and welfare of a child. *Id.*

We have stated that

[b]efore granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the intangible dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of the relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the child[ren]'s needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

*Id.* At 1121 (quoting *In re C.S.*, 761 A.2d 1197, 1202 (Pa. Super. 2000)).

The trial court may "equally emphasize the safety needs of the child, and should also consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent." *See In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (citation omitted). Additionally, the court may emphasize the safety needs of a child. *See In re K.Z.S.*, 946 A.2d 753, 763

(Pa. Super. 2008). "[W]here there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists." *Id.* at 762-63.

This Court has recognized that "a parent's basic constitutional right to the custody and rearing of his . . . child is converted, upon the failure to fulfill his . . . parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (citation omitted). Furthermore, "a child's life simply cannot be put on hold in the hope that [he] will summon the ability to handle the responsibilities of parenting." *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (citation and quotation marks omitted).

Here, Dr. O'Hara was accepted as an expert witness without objection. Dr. O'Hara testified that he followed generally accepted practice and protocol for all of the evaluations completed. *See* N.T., 11/14/18, at 137. The record reflects that Dr. O'Hara received positive information regarding Father and noted it in both his report and testimony. Dr. O'Hara's testimony indicates that he considered all of these matters and weighed them along with personality assessment screeners and his own observations.

Additionally, CYS presented evidence that Father did not have contact with Child for the majority of her life. He did not request contact until a chance meeting with Ms. Hysong in December 2017. Thereafter, he visited with Child no more than five times, and several of those visits occurred after the filing of the termination petition. Both CYF caseworkers and Dr. O'Hara testified that

there was no bond between Child and Father and that Maternal Grandparents appropriately cared for Child and met her needs.

Accordingly, Appellant's challenges to the thoroughness or reliability of Dr. O'Hara's expert opinion due to insufficient corroboration are meritless. Furthermore, the record provides ample support for the trial court's ruling that Child's needs and welfare were best served by termination. In short, we discern no basis to disturb the court's findings that no bond existed between Father and Child, termination of Father's rights would not be detrimental to Child, and adoption would best serve Child's needs and welfare. *See Z.P.*, 994 A.2d at 1126-27; *K.Z.S.*, 946 A.2d at 763; *In re Z.S.W.*, 946 A.2d at 732. Therefore, Appellant's claim fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/24/2019